IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| *Plaintiff*, | Criminal Action |
| v. | No. 13-cr-206-2 |
| RASHIDAH BRICE, | |
| *Defendant*. | |

MEMORANDUM OPINION

Goldberg, J.                                                             December 15, 2022

This case presents a difficult question under the First Step Act for compassionate release and involves balancing the disturbing conduct underlying Defendant Rashidah Brice's conviction with the extraordinary and compelling events that occurred after sentence was imposed. For reasons explained below, I will partially grant Brice's motion and reduce her sentence by 30 months but will not order her release as she has requested. Although Brice's circumstances are extraordinary and compelling and warrant a reduction from her original sentence, due to the serious and violent nature of her crimes and their effect on the victims, I find that releasing Brice now would not be consistent with the sentencing factors of 18 U.S.C. § 3553(a).

## I. FACTUAL AND PROCEDURAL BACKGROUND

On August 20, 2013, Defendant Rashidah Brice pled guilty to one count of sex trafficking of a minor by force and two counts of attempted sex trafficking by force in violation of 18 U.S.C. § 1591. I thereafter sentenced Brice to 185 months of incarceration. Brice now moves for compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A)(i) based on "extraordinary and compelling reasons." Brice argues that her sentence should be reduced because: (1) she was sexually

1

assaulted by a correctional officer while serving her sentence; (2) she cooperated in the successful prosecution of the correctional officer; and (3) both parents of her two minor children are presently incarcerated. Brice asks that her sentence be reduced to time served and that she be released. The Government opposes this Motion.[1]

### A. Brice's Criminal Conduct

Brice and her codefendant, Christian Womack, forced or attempted to force three individuals to have sex with strangers in exchange for money. The following facts are taken from the pre-sentence investigation report (PSR) prepared by the Probation Department.

Brice pled guilty to trafficking three victims, which the parties identify as Minor 1, Person 2, and Person 3. The most egregious facts concern Minor 1, then 17, who was found by Brice and Womack alone at a casino in Atlantic City. (PSR ¶¶ 13-14.) The two invited Minor 1 to participate in a scheme wherein Minor 1 would pose as a prostitute and steal customers' money rather than have sex with them. (Id. ¶ 14.) But when Minor 1 found her first customer, Brice demanded that Minor 1 have sex with the man, threatening that Womack would "beat the shit out of [Minor 1]" if she did not comply and punching Minor 1 in the mouth. Minor 1 then had sex with the man, which Brice recorded on video. (Id. ¶ 15.)

Over the next few weeks, Brice and Womack took Minor 1 to multiple locations and forced Minor 1 to have sex with over a dozen strangers. Brice forced Minor 1 to use cocaine so that Minor 1 could stay awake during these events. At one point, Brice held a gun to Minor 1's head. (Womack put a gun to Minor 1's head multiple times.) Brice also forced Minor 1 to perform oral

---

[1] I held an evidentiary hearing on July 20, 2022. The parties agreed to the consideration of the facts set out in the briefs and the admission of the exhibits attached to them. (N.T., 7/20/22, 5-6.)

sex on her while Brice recorded a video. (Id. ¶¶ 16-21.) Minor 1 escaped when a stranger took pity on Minor 1 and gave her $50 for a taxi. (Id. ¶ 20.)

Minor 1 stated that she would "never be the same" as a result of the abuse Brice and Womack inflicted on her. (N.T., 10/22/14, 38.) Minor 1 spent the three years following Brice's crimes at a shelter for child victims of sex trafficking, where she saw her family only briefly and did not attend high school with her peers. (Id.) She stated that she is unable to open up to people or trust them, that she is "forever . . . haunted by the feeling of being unclean and impure," and that she lives in fear. (Id. at 37.)

Brice's two other victims were adult women. After meeting Person 2 at a casino in Atlantic City, Brice and Womack used pictures from Person 2's Facebook profile to make a Backpage.com posting advertising Person 2 for "dates." (PSR ¶¶ 22-26.) Person 2 became upset and left. (Id. ¶ 26.) As Person 2 left, Brice and Womack threatened to kill her. (Id. ¶ 27.)

Brice and Womack met Person 3 through a mutual friend and attempted to advertise dates with her through Backpage.com. Person 3 ran away when Womack attempted to have sex with Person 3 while she was sleeping. (Id. ¶ 36.) Brice and Womack then threatened to kill her. (Id. ¶¶ 37-38.) Person 3 stated that the memory of the crime still caused her to lose sleep, freeze up, and feel sick. (N.T., 10/22/14, 35-36.)

### B. The Original Sentence

When I sentenced Brice, I noted that her crimes were "heinous" and "horrifying" and that the harm to the three victims was severe. (N.T., 10/22/14, 22, 64-65.) I also observed that Brice had had a "horrible upbringing," including being raped by her own father. (Id. at 65.) Brice was also abused by her codefendant Womack. During the trafficking of Minor 1, Brice attempted to

3

leave Womack but Womack beat Brice until she stayed. (PSR ¶ 16.) Brice's aunt testified that Womack had control over Brice. (N.T., 10/22/14, 42-43.) I determined that Brice was remorseful, and also considered that Brice was 22 years old at the time of the offense conduct and 24 on the day of sentencing. (Id. at 65-66.)

Brice's original guideline range was 292 to 365 months. (N.T., 10/22/14, 24.) Following a downward departure based on the Government's motion under U.S.S.G. § 5K1.1, Brice's guideline range was reduced to 168 to 210 months. I determined that a sentence within this range was appropriate, placing significant weight on the seriousness of Brice's crimes.

### C. Brice's Subsequent Sexual Assault by a Correctional Officer While Incarcerated

The parties do not dispute that while Brice was serving her sentence, she was sexually assaulted by a correctional officer, who forced her to engage in nonconsensual oral sex. (N.T., 7/20/22, 15.) A press release issued by the Government described criminal sexual conduct by this officer against inmates at the facility. (Brice's Ex. D.) At the hearing on Brice's motion for compassionate release, Brice testified that the correctional officer assaulted her in "several places" around the correctional facility, and that a second officer sexually assaulted her but was not prosecuted. (N.T., 7/20/22, 37.)

The parties do not dispute that this correctional officer sexually assaulted multiple inmates at the facility where Brice was housed before he was eventually prosecuted. The Government's press release also reflects that two other correctional employees, who held the title of lieutenant, were simultaneously charged with sexually assaulting inmates at the same facility. Brice stated in a declaration attached to her motion in this case that she initially did not feel she could report this abuse because the officer's supervising lieutenant was also an abuser. (Brice's Ex. C ¶ 10.) Brice

4

further testified at the hearing before me that inmates who reported sexual assault were placed in solitary confinement, purportedly for the reporting inmate's protection. (N.T., 7/20/22, 36.) Brice stated that she had seen "two or three different girls" placed in solitary confinement for talking about sexual assault over the phone. (N.T., 7/20/22, 38.)

### D. Brice's Cooperation

Brice cooperated in the prosecution of the correctional officer who sexually assaulted her. According to Brice's testimony before me, she was interviewed by investigators, then returned to the facility, where she was instructed to tell no one of the investigation. (N.T., 7/20/22, 40.) The United States Attorney's Office that handled the prosecution of the correctional officer stated in a letter that Brice "assisted the government's investigation, including by providing information during interviews and in testimony before the grand jury, and was available to testify at trial, had the case not been resolved by guilty plea." (Brice's Ex. E.) The correctional officer pled guilty and was sentenced to a term of imprisonment.

Brice represents, and the Government agrees, that other inmates who cooperated in the correctional officer's prosecution received reductions in their sentences pursuant to the Government's motions under Federal Rule of Criminal Procedure 35(b). The Government did not file such a motion with this Court with respect to Brice.

### E. Brice's Children

Brice and her codefendant Womack have two children together. Brice represents in her Motion that, because both she and Womack are currently incarcerated, Brice's mother is the children's legal guardian. In a letter attached to Brice's motion, Brice's mother states that one child has asthma and the other has a G6PD (an enzyme) deficiency and food allergies. The mother's

letter further states that she suffers from asthma, back pain, and carpal tunnel syndrome. For that reason, the children are currently staying with Brice's sister. (Brice's Ex. B.)

### F. Brice's Conduct in Prison

The Government attaches Brice's disciplinary record from her time in BOP custody. Brice has numerous disciplinary infractions; however, most were minor such as feigning illness or hoarding medication. In one incident, Brice fought with another inmate, pushing the other inmate against a wall and putting her hands on the other inmate's neck.[2]

## II. LEGAL STANDARD

A motion by a defendant to reduce her sentence pursuant to 18 U.S.C. § 3582(c) must meet two requirements. See United States v. Andrews, 12 F.4th 255, 258 (3d Cir. 2021). First, the defendant must demonstrate that "extraordinary and compelling reasons warrant such a reduction." § 3582(c)(1)(A)(i). Second, the defendant must show that a reduction is "supported by the traditional sentencing factors under 18 U.S.C. § 3553(a), to the extent they are applicable." Andrews, 12 F.4th at 258.

## III. DISCUSSION

### A. Extraordinary and Compelling Reasons

To evaluate whether Brice is entitled to a reduction in sentence, I must first determine whether "extraordinary and compelling reasons warrant such a reduction." § 3582(c)(1)(A)(i).

---

[2] The Government further contends that Brice engaged in witness tampering by telling other inmates that an individual was testifying against Brice's partner. To support this assertion, the Government offers only a heavily redacted page of notes from an FBI interview of the alleged witness. The witness's name is redacted and it is not stated whether the agents conducting the interview credited the witness's account. I find this incomplete information too unreliable to establish that the alleged witness tampering occurred and therefore it will not be considered.

Brice argues that the following circumstances present extraordinary and compelling reasons: (1) her sexual assault while in custody, (2) her assistance in bringing the perpetrator to justice, and (3) the fact that her minor children currently do not have a parent who is not in custody. The Government disagrees that these circumstances are extraordinary and compelling.

### 1. Sexual Assault by a Correctional Officer

I begin with Brice's sexual assault. Brice argues that when I sentenced her to 185 months, it could not have possibly been contemplated that she would be sexually abused at the hands of prison guards. Brice therefore submits that what she experienced in prison was more than was intended to punish her for her crimes. While the Government does not dispute that what Brice suffered is shocking and tragic, the Government argues that it is not an "extraordinary and compelling reason[] [that] warrant[s] . . . a reduction" in Brice's sentence.

In resolving this dispute, I find United States v. Mateo, 299 F. Supp. 2d 201 (S.D.N.Y. 2004), instructive. The defendant in Mateo sought a departure from a guidelines sentence at her initial sentencing based on the fact that she had been forced to undress in front of male prison guards and to give birth without medical attention. Id. at 211-12. The court applied a nine-level downward departure based on those circumstances. Id. at 212. The Mateo court first observed that some "derelictions on the part prison officials [are] to be expected as an incidence of the usual hardships associated with incarceration." Id. at 211. Thus, not every defendant who has an unpleasant experience in prison is entitled to a reduction in sentence. But when a defendant experiences a hardship that is "uniquely extraordinary, beyond the heartland of ordinary disparities," it risks "enhanc[ing], to a disproportionate degree, the level of punishment contemplated to be experienced by inmates . . . during the period of incarceration prescribed by the Guidelines[.]" Id. at 212.

7

Also instructive is <u>United States v. Rodriguez</u>, 213 F. Supp. 2d 1298 (M.D. Ala. 2002), which, like <u>Mateo</u>, involved a guidelines departure at an initial sentencing. The defendant in <u>Rodriguez</u> was raped by a correctional officer while awaiting sentencing, and the court granted a downward departure. <u>Id.</u> at 1302-03. As in <u>Mateo</u>, the court decided that failing to take the rape into account would "mete out a disproportionate punishment." <u>Id.</u> The <u>Rodriguez</u> court also found it significant that the rape was inflicted "at the hands of those who were responsible for [the defendant's] safety while awaiting sentencing." <u>Id.</u> "[T]hus the circumstance of awaiting sentencing, while not the legal cause of [the defendant's] assault, was a condition that allowed the assault to happen. In other words, the assault occurred on [the] court's watch." <u>Id.</u> at 1302.

Here, the sexual assault Brice experienced is far beyond the ordinary "derelictions on the part prison officials" that a defendant (or the sentencing judge) can anticipate at the time of sentencing. And Brice's suffering is compounded by the fact that she entered prison with the trauma of having been raped by her own father and physically abused by her codefendant. Thus, failing to take Brice's sexual assault into account risks "enhanc[ing], to a disproportionate degree, the level of punishment contemplated to be experienced by" Brice as a sentence for her crimes.

This is also not a case of an isolated or aberrant act of indiscretion on the part of a single correctional officer. The officer in question abused multiple inmates before he was eventually caught and prosecuted, and multiple employees of the correctional facility were complicit in the abuse. These repeated acts of violence make the prison's failure to protect Brice's safety while in custody particularly egregious.

The Government also argues that <u>Mateo</u> and <u>Rodriguez</u> do not apply to Brice's circumstances because the standard to reduce a sentence already imposed is higher than the standard to depart from the guidelines when imposing a sentence in the first instance. The Government is right

8

about this, but both Mateo and Rodriguez found the circumstances to be "extraordinary," which is the same standard § 3582(c)(1)(A)(i) requires. In addition, the principle underlying those cases remains applicable after a sentence has been imposed—namely, that severe and extraordinary injury, inflicted by the government's own agents, can amount to disproportionate punishment.

The Government further urges me not to follow Mateo and Rodriguez because the defendants there had committed nonviolent crimes. I agree that this distinction is relevant, but it is only one factor in deciding Brice's motion. Brice's crimes are separate incidents and, while reprehensible, they do not minimize or make the sexual assault she experienced at the hands of a correctional officer less extraordinary or compelling.

### 2. Cooperation Against the Assailant

Brice's next ground for a reduction in sentence is her cooperation in the prosecution of the correctional officer who abused her, which Brice submits exposed her to a risk of retaliation. Brice and the Government disagree as to whether this ground may even be considered on a motion under § 3582(c).

The Third Circuit has held that cooperation cannot be the sole basis for a reduction in sentence under § 3582(c). United States v. Claude, 16 F.4th 422, 426-27 (3d Cir. 2021). To do so would undermine the policy of Federal Rule of Criminal Procedure 35(b), which states that it is the Government's prerogative to decide when cooperation is substantial enough to warrant a motion for reduction. See id. But the Third Circuit also stated that cooperation can be a "relevant factor" that may be considered on a motion for compassionate release so long as it is not the sole basis. Id. at 427. The Government urges me not to follow the Third Circuit's "dictum," relying, again, on the argument that to do so would undermine the Government's prerogative under Rule 35(b). The

parties have not identified any other authority addressing whether cooperation may be considered among other factors in a motion under § 3582(c).

My consideration of Brice's cooperation as a relevant factor does not supplant the Government's prerogative under Rule 35(b). It is entirely appropriate for me to consider how Brice responded to suffering abuse at the hands of her prison guards. The "broad discretion" federal courts have "to consider all relevant information" at a "proceeding[] that may modify an original sentence" is "bounded only when Congress or the Constitution expressly limits the type of information a district court may consider in modifying a sentence." Concepcion v. United States, 142 S. Ct. 2389, 2398 (2022). That Brice reacted to her trauma by agreeing to assist in the prosecution of her assailant supports a finding that Brice's disproportionate suffering while in custody "warrant[s] … a reduction" in her sentence and that these circumstances are extraordinary and compelling. Despite facing tremendous adversity both in her personal life before prison and at the hands of a prison guard, Brice responded by preventing more inmates from being abused, including cooperating in an investigation regarding individuals who had authority over her and could have retaliated against her. I also note that Congress and the Department of Justice have determined that "[p]rison rape often goes unreported," 34 U.S.C. § 30301(6), and "retaliation for reporting instances of sexual abuse and for cooperating with sexual abuse investigations is a serious concern in correctional facilities." Department of Justice, National Standards To Prevent, Detect, and Respond to Prison Rape, 77 F.R. 37106-01 (June 20, 2012).

The facts of this case are unusual, and a decision in Brice's favor would not suggest that a reduction is appropriate any time a defendant suffers an unforeseen tragedy or cooperates in a prosecution. Brice entered prison at a young age after being abused by her codefendant and members of her family, and, once there, again suffered abuse, this time at the hands of government

10

officials responsible for her safety, in what was not an isolated incident but a pattern of misconduct. Brice then cooperated with other government officials to prevent the abuse from continuing. For these reasons, I find that Brice has shown "extraordinary and compelling reasons [that] warrant . . . a reduction" in her sentence.[3]

### B.  § 3553(a) Factors

Even though Brice has shown "extraordinary and compelling" reasons to reduce her sentence, I may not grant a reduction unless I determine that it would be consistent with § 3553(a), which sets out the factors to be considered when imposing a sentence. Among those factors, the following are relevant here:

> (1) the nature and circumstances of the offense and the history and characteristics of the defendant; [and]
> (2) the need for the sentence imposed—
>     (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
>     (B) to afford adequate deterrence to criminal conduct; [and]
>     (C) to protect the public from further crimes of the defendant[.]

§ 3553(a)(1), (a)(2).

Applying those factors to Brice's circumstances requires weighing facts that are, in some sense, uncomparable. On one side of the weighing, Brice has suffered more than necessary to constitute "just punishment for the offense" she committed. But, under the law, I cannot consider Brice's suffering in isolation. As I noted when imposing Brice's sentence, Brice's crimes were

---

[3] Brice also argues that the fact that her minor children do not have a free parent and reside with Brice's mother and sister is an extraordinary and compelling reason warranting a reduction. As to this ground, I agree with the Government that, while this fact merits sympathy, it is not, standing alone, extraordinary and compelling. See United States v. Pereira, 272 F.3d 76, 81 (1st Cir. 2001) ("[I]t is the unfortunate norm that innocent family members suffer considerable hardship when a relative is incarcerated.").

"heinous" and "horrifying." (N.T., 10/22/14, at 64-65.) The lives of Brice's victims have been forever altered. Most strikingly, the minor victim will never overcome the trauma of being held captive for weeks by Brice and Womack while they forced her, sometimes at gunpoint, to have sex with strangers. And while Brice was not the leader in this operation, the facts reflect that she was an active participant.

Just as the sexual assault Brice suffered in prison cannot be undone, the harm inflicted on Brice's victims cannot be undone. It would not be fair to the victims to now release one of the defendants as compensation for the prison's failure to protect that defendant from harm in prison. The need to protect the public and promote respect for the law require that Brice continue to serve a significant period of incarceration.

When I sentenced Brice, I noted that a significant sentence was necessary, but I also observed that 168 months, the low end of the guideline range, would also be significant. I then imposed a sentence of 185 months. I will now reduce Brice's sentence to 155 months. I find that this sentence continues to reflect the seriousness of Brice's offense, promotes respect for the law, protects the public, and provides just punishment.

An appropriate order follows.